## BECKRICH v. CITY OF NORTH TONAWANDA.

(Supreme Court, Appellate Division, Fourth Department.   January 8, 1901.)

1. VENDOR AND PURCHASER—ACTION FOR PURCHASE PRICE—BURDEN OF PROOF.
   Where action is brought to recover the price of land alleged to have been purchased and conveyed, and there are no allegations in the complaint appropriate to an action for specific performance, or to recover on the theory of a contract, tender of performance by vendor, and a refusal to accept, plaintiff, to recover, must show that defendant accepted delivery of the conveyance.

**2. SAME—ACCEPTANCE OF CONVEYANCE BY CITY—INSUFFICIENT EVIDENCE.**

North Tonawanda, by its charter (Laws 1897, c. 361, tit. 7, § 3), was given power to purchase market grounds, subject to a limited veto power in the mayor. The city accepted an offer to sell land therefor, and another resolution was also passed directing an order to be drawn for the price in favor of the vendor, to be placed in the mayor's hands until the conveyance was made and title approved. No direction was given to accept the conveyance or deliver the order. An order was drawn and signed by the clerk, but not by the mayor, and it never was delivered. Thereafter the city engineer was directed to do certain preparatory work in anticipation of the purchase, but in doing it the land was not interfered with. Some time after, the vendor's attorney stated to the council that the deed had been delivered, and the title approved, and he demanded the order for the purchase money. At a meeting shortly thereafter a resolution accepting the conveyance and ordering it recorded was passed, but vetoed, and the veto never overruled. The city clerk caused the deed to be registered by the treasurer and recorded, and the clerk's account therefor was afterwards audited and paid. The city engineer accordingly made a change in the assessor's map, and by reason thereof the property was not assessed, but possession was never taken by the city. *Held*, that there was no acceptance of the conveyance by or under the direction or authority of the council with the mayor's approval, as the city's charter required, and hence an action against it for the purchase price, based on an acceptance of the conveyance, could not be maintained.

McLennan and Spring, JJ., dissenting.

Appeal from trial term, Niagara county.

Action by Rose Beckrich, as executrix, etc., of Nicholas Beckrich, deceased, against the city of North Tonawanda. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Lewis T. Payne and P. F. King, for appellant.
A. F. Premus, for respondent.

WILLIAMS, J. The action was brought to recover the purchase price of real property alleged to have been purchased by and conveyed to the city, respondent, for a market site. The action was based upon an allegation of delivery of a conveyance of the property to and an acceptance thereof by the city. There were no allegations in the complaint appropriate to an action for specific performance of an alleged contract to purchase, or even to a recovery upon the theory of a contract, and a tender of performance by the vendor and refusal to accept by the city. It was necessary, in order to recover under the pleadings, that it should be found that the city accepted delivery of the conveyance. The trial court directed a verdict solely upon the ground that no valid acceptance had been shown. There was a constitutional question raised as to the power of the city to make the purchase and incur the indebtedness for the purchase price of the property, but the decision was not put upon that ground, and, inasmuch as there were matters of fact to be considered in connection with that question, we think the question should be passed upon by a trial court and a jury before it is considered by this court. The only question here is

whether the direction of a verdict should be upheld on the ground it was put by the trial court,—failure to prove acceptance of the conveyance by the city.

The city, respondent, was incorporated by chapter 361 of the Laws of 1897, which became a law April 24th of that year. By section 3, tit. 7, of that act the common council was given the power to purchase market grounds, and establish and regulate public markets. This power was, however, subject to the power given to the mayor by section 5, tit. 6, of the act to veto any resolution passed by the common council, and this veto could only be overruled by a two-thirds vote of the members of the common council. So that the power to purchase and accept a conveyance of real property for a market could not be exercised by any officer, agent, or employé of the city; nor could any such officer, agent, or employé accept a conveyance of such property for the city unless expressly authorized to do so by the common council, with the consent of the mayor; and it would seem that such authority could only be given by resolution of the common council, in order that its action might be subjected to the veto power of the mayor, provided for by the charter. Under these provisions of the charter the question is whether the undisputed facts show a nonacceptance of the conveyance of the property in question by the city. October 5, 1897, at a meeting of the common council, a resolution was adopted authorizing the clerk to advertise for proposals for a market site, and pursuant to such resolution such notice was published October 7 and 14, 1897. October 19, 1897, at a meeting of the common council, a written proposition by plaintiff's testator to sell the property in question was made, and thereupon a resolution was passed that the proposition be accepted, and this resolution was approved by the mayor. November 3, 1897, at a meeting of the common council, a resolution was passed directing that an order be drawn on the treasurer for the purchase price of the property in favor of the plaintiff's testator, the order to be placed in the hands of the mayor until the property be conveyed to the city by warranty deed, with abstract of title, to be approved by the proper officer. November 4, 1897, such order was drawn and signed by the clerk, but it never was signed or indorsed by the mayor, and was never at any time delivered to plaintiff's testator. November 9, 1897, at a meeting of the common council, a resolution was passed directing the city engineer to establish the grade of streets about the proposed market site, and to make plans for necessary sewers, and for grading the market site up to the proper street level. Thereafter, and in the fall of 1897, the city engineer, pursuant to the resolution, surveyed the property, set monuments on street corners, and made plans for a sewer, and profile of proposed grades about this proposed site. No streets were ever opened, or grading done, or work performed upon or with reference to the proposed site. The matter lay along until March 15, 1898, when, at a meeting of the common council, a communication was presented, signed by the attorney for the plaintiff's testator, stating that the deed had been delivered, and the title had been approved

by the city attorney, and demanding the order for the purchase money in the hands of the mayor. No action was taken by the common council at that time with reference to the communication. March 30, 1898, at a meeting of the common council, a resolution was passed that the conveyance be accepted, and that the city clerk cause the same to be recorded. The personnel of the city government changed about this time. The city clerk was changed about April 5, 1898, and he was urged to put the conveyance on record before he left the office. The mayor, however, had not acted upon the resolution, and his time to do so had not expired. The clerk, without calling the mayor's attention to the resolution, took the deed to the treasurer, and had it registered, and delivered it to the county clerk for record. The conveyance having passed the treasurer's office, the change was made on the assessor's map in accordance therewith by the city engineer. April 8, 1898, the mayor vetoed the resolution of March 30, 1898, and the veto was presented to the common council at a meeting thereof held April 21, 1898. No effort was ever made to overrule the veto, and the resolution, therefore, was inoperative, the same as though never passed by the common council. At the same meeting the account of the county clerk for recording the conveyance—90 cents—was audited and ordered paid. The conveyance appears to have been acknowledged November 2, 1897, but, the plaintiff's intestate having died October 9, 1898, his executrix, by attorney, presented a communication to the common council at a meeting thereof held April 19, 1899, in which it was stated that the conveyance was delivered to the city about April 1, 1898. Demand was made for the purchase price, and legal proceedings were threatened. The assessors, by reason of the change in their map, did not assess the property during the years 1898 and 1899. The city has never taken possession of the property, or done any work or made any improvements thereon. No complaint is made as to the form of the conveyance or the title to the property. The action was begun November 1, 1899.

These are the undisputed facts upon which the trial court acted in directing the verdict. We think the direction was properly made. There was no acceptance of the conveyance by or under the direction or authority of the common council, with the approval of the mayor. If this action was based upon an alleged contract of purchase, and specific performance were demanded, the proceedings of the common council, with the approval of the mayor, in the fall of 1897 would be entitled to serious consideration, as showing the making of a contract; but it cannot be claimed any evidence is found in such proceedings of an acceptance of the conveyance by the common council itself, or authority in any one else to so accept. By the resolution of October 19th the proposal of plaintiff's testator was accepted. By the resolution of November 3d the order was directed to be drawn and left with the mayor until the conveyance was given and title approved. No direction was given to accept the conveyance or deliver the order. That was left for future action. November 9th the city engineer was directed to do cer-

tain work in anticipation of the proposed purchase, and he did the work, but the property was in no way interfered with, no street opened, no grading done. It was all merely surveying, preparing plans, and getting ready to do some work and make some improvements when title was actually taken of the property. Nothing further was done until the middle of March, 1898, when an effort was made to have the purchase completed, title taken, and the purchase price paid. The common council took no action until March 30, 1898, when they passed a resolution accepting the deed and directing the record. This was sufficient, if effectual, to close up the purchase, and give the right of action here brought. This resolution was, however, duly vetoed, and this action of the common council came to naught. All the acts of the city clerk, the city treasurer, and the city engineer with reference to the conveyance, its acceptance, registry by the treasurer, changing assessors' map, and recording, were entirely unauthorized, and amounted to nothing. These officers could not bind the city by doing what they did, and an acceptance by the city of a delivery of the conveyance could not be found or inferred from any such acts. The auditing and paying for the record of the conveyance could have no effect in ratifying the acts of the officials. The auditing of the item of 90 cents was in a bunch of other accounts. The audit was at the same meeting as the presentation of the mayor's veto. The council could not have intended any such ratification. They may well have considered it a proper thing to do to pay the county clerk, so that he should not suffer even for the unauthorized act of the city clerk in directing the record. In any event, whatever the intention of the common council was, they could not in this indirect way override the veto of the mayor, and render it nugatory. We are unable, in any view of the case, to see that there was any question for the jury as to a legal acceptance of the conveyance by the city. The trial court properly directed a verdict for defendant.

The judgment and order appealed from should be affirmed, with costs. All concur, except McLENNAN and SPRING, JJ., who dissent.